UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

| | | |
|---|---|---|
| In re Windy Cove, Inc. | § § § § § § § § § | MISCELLANEOUS ACTION No. _____ |

**EXXONMOBIL OIL CORPORATION'S
MOTION TO QUASH THE DEALERS/PLAINTIFFS'
<u>SUBPOENA TO TESTIFY AT A DEPOSITION</u>**

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, ExxonMobil Oil Corporation ("ExxonMobil") submits this Motion to Quash the Subpoena to Testify at a Deposition In a Civil Action (the "Subpoena") issued by Windy Cove, Inc., Newkirk's Santa Fe Service, Inc., Oceanside Akam Oil, Inc., Staffing and Management Group, Inc., HB Fuel, Inc., 1809 Partners LLP, Mike's Liquor Property, LLC, Kazmo, LLC, Sun Rise Property, LLC, Mohammad Bahour, and Hamid Kalhor (collectively, the "Dealers/Plaintiffs").

**FACTUAL & PROCEDURAL BACKGROUND**

The Dealers/Plaintiffs are owners of gas stations in southern California who purchase Mobil-branded gasoline from Circle K Stores, Inc. ("Circle K") and then resell that gas to the general public. *See* Ex. 1. In 2021, the Dealers/Plaintiffs filed suit against Circle K in the United States District Court for the Southern District of California, which lawsuit is pending under Civil Action No. 3:21-cv-01416-MMA-DEB (the "Lawsuit"). *See id.* The Dealers/Plaintiffs allege in the Lawsuit that Circle K is breaching contractual obligations and other legal duties when it sets the prices for the Mobil-branded gasoline that Circle K sells to the Dealers/Plaintiffs. *Id.* Circle K has denied these allegations. *See* Ex. 2.

1

ExxonMobil is not a party to the Lawsuit. ExxonMobil does not sell gas directly to the Dealers/Plaintiffs. ExxonMobil does not determine the prices that Circle K charges in selling gas to the Dealers/Plaintiffs. ExxonMobil does, however, sell Mobil-branded gasoline to Circle K, and Circle K then resells that gas to third parties like the Dealers/Plaintiffs.

Earlier this year, the Dealers/Plaintiffs began seeking discovery regarding the contractual terms and pricing associated with Circle K's purchase of Mobil-branded gasoline from ExxonMobil. *See* Ex. 3. The Dealers/Plaintiffs initially sought this information through conventional written discovery (*e.g.*, requests for production) to Circle K. *Id.* Circle K objected, asserting that the terms of its contracts with ExxonMobil are: (1) confidential and sensitive trade secrets, the disclosure of which would result in irreparable harm to both ExxonMobil and Circle K; and (2) irrelevant to the claims and issues in the Lawsuit, as the relevant inquiry under California law has nothing to do with Circle K's purchase of gas from ExxonMobil, but instead examines whether Circle K's prices—in selling gas to the Dealers/Plaintiffs—is within the range of prices charged by other wholesale distributors of gasoline who compete with Circle K. *Id.*

After Circle K resisted the Dealers/Plaintiffs' discovery, the Dealers/Plaintiffs filed a motion asking the California federal district court to compel Circle K to produce information regarding its contracts with ExxonMobil, including information regarding the price(s) Circle K pays to ExxonMobil for Mobil-branded gasoline. Ex. 4. Circle K opposed the Dealers/Plaintiffs' motion to compel (Ex. 5), and the California court held an oral hearing on the motion on March 30, 2022.

On May 11, 2022, while their motion to compel awaited a ruling from the California court, the Dealers/Plaintiffs issued a subpoena (the "Original Subpoena") to ExxonMobil. Ex. 6. The Original Subpoena included commands to both: (1) present an ExxonMobil representative to

appear for a May 27, 2022 deposition on 18 different topics; and (2) produce at the May 27, 2022 deposition documents in response to 21 requests for production. *Id.* The deposition topics and requests for production in the Original Subpoena to ExxonMobil targeted much of the same information that was the subject of the Dealers/Plaintiffs' motion to compel (i.e., information associated with the contracts between Circle K and ExxonMobil). *Compare* Ex. 6 *with* Ex. 4.

On May 25, 2022, the Dealers/Plaintiffs agreed to a continuance of the compliance date in the Original Subpoena. Ex. 7. Pursuant to this agreement, the Original Subpoena now commanded ExxonMobil to present a representative for deposition (and to produce documents at the deposition) on June 30, 2022. *Id.* The Dealers/Plaintiffs further agreed that ExxonMobil would have until June 2, 2022 to object to the documents requests and until June 23, 2022 to file a motion to quash the proposed deposition. *Id.*

On May 26, 2022, the California district court denied the Dealers/Plaintiffs' motion to compel. Ex. 8. In doing so, the California court agreed with Circle K that the terms of its contracts with ExxonMobil are not only confidential trade secrets, but also irrelevant to the claims and defenses in the Lawsuit. *Id.* pp. 6, 8 ("[T]here is no dispute that Circle K's wholesale fuel costs and the Branded Wholesaler Agreement are proprietary trade secrets….[T]he price Circle K pays for fuel sold to Plaintiffs is not relevant . . . and is not necessary for Plaintiffs to prepare their case for trial."). In addition to holding that the price Circle K pays in purchasing gas from ExxonMobil is irrelevant, the California court also identified what is relevant:

> ***The relevant inquiry, therefore, is whether Circle K's prices fall within the range of prices charged by other distributors.***
> ….
> In sum, Plaintiffs have not shown that Circle K's wholesale fuel costs are relevant or necessary for trial. ***Plaintiffs, however, are not precluded from conducting***

3

> *discovery into how Circle K sets the price it charges Plaintiffs and how Circle K's prices compare to those of its competitors.*

*Id.* at pp. 7, 9 (emphasis added).

After the California district court denied their motion to compel, the Dealers/Plaintiffs withdrew many of the requests for production and deposition topics in the Original Subpoena. Ex. 9. On June 2, 2022, ExxonMobil objected to the requests for production that had not been withdrawn, and the Dealers/Plaintiffs never sought a ruling on those objections. And on June 23, 2022, ExxonMobil filed a motion to quash the Original Subpoena (the "Motion to Quash the Original Subpoena") in the Southern District of Texas, Houston Division, which action was assigned to Judge Bennett under Miscellaneous Action No. 4:22-mc-1064. Ex. 10.

ExxonMobil raised a number of arguments in its Motion to Quash the Original Subpoena, including the fact that the Dealers/Plaintiffs failed to include the necessary witness fee when they served the Original Subpoena. *Id.* p. 6; Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires…tendering the fees for 1 day's attendance and the mileage fee allowed by law.").

Pursuant to the Judge Bennett's Procedures and Practices, the Dealers/Plaintiffs' response to ExxonMobil's Motion to Quash the Original Subpoena was due on July 14, 2022 (i.e., 21 days after the Motion to Quash the Original Subpoena was filed). On July 6, 2022, however, the Dealers/Plaintiffs withdrew the Original Subpoena in its entirety "[d]ue to alleged procedural defects" and to "clarify the categories of discovery sought in light of the [California] Court's order denying the [Dealers/Plaintiffs] motion to compel discovery." Ex. 11.

Dealers/Plaintiffs served ExxonMobil with a new subpoena (the "Subpoena")—which is the subject of this this Motion—on July 6, 2022. Ex. 12. The Subpoena commands ExxonMobil to both: (1) present an ExxonMobil representative for a July 15, 2022 deposition covering 9

4

different topics; and (2) produce at the July 15, 2022 deposition documents in response to 10 requests for production. *Id.*

Although Dealers/Plaintiffs included the witness fee with the Subpoena, the Subpoena is nonetheless objectionable for many of the same reasons (as well as some new reasons) raised by ExxonMobil in opposing the Original Subpoena. Thus, on July 14, 2022, ExxonMobil served its objections to the requests for production included in the Subpoena. Ex. 13. And ExxonMobil hereby submits this Motion to quash the deposition portion of the Subpoena, for the reasons more fully explained below.[1]

**STANDARD OF REVIEW**

The scope of discovery is limited to nonprivileged matters that are (1) relevant to any party's claim or defense, and (2) "*proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information*, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery *outweighs its likely benefit*." FED. R. CIV. P. 26(b)(1) (emphasis added). Further, on "motion or on its own, the court *must* limit the . . . extent of discovery otherwise allowed . . . if it determines that[] the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* at 26(b)(2)(C) (emphasis added).

---

[1] Having objected to the requests for production in the Subpoena, ExxonMobil is not required to comply with the requests unless and until Dealers/Plaintiffs obtain a court order compelling compliance. FED. R. CIV. P. 45(d)(2)(B)(i)-(ii). As of the time of this filing, ExxonMobil is not aware of any efforts by Dealers/Plaintiffs to compel ExxonMobil to comply with the requests for production. Nor did Dealers/Plaintiffs make any effort to compel ExxonMobil to comply after ExxonMobil objected to the similar requests for production in the Original Subpoena. Thus, this Motion focuses on the Dealers/Plaintiffs' effort to subpoena an ExxonMobil representative to give deposition testimony on the topics identified in the Subpoena.

Additionally, courts must quash or modify a subpoena that (1) "fails to allow a reasonable time to comply," (2) "requires disclosure of privileged or other protected matter, if no exception or waiver applies," (3) or "subjects a person to undue burden." *Id.* at 45(d)(3)(A)(i–iv). The Federal Rules of Civil Procedure also recognize heightened considerations when dealing with third-party subpoenas that—like the Dealers/Plaintiffs' Subpoena—require "disclosing a trade secret or other confidential research, development, or commercial information." *Id.* at 45(d)(3)(B)(i).

**ARGUMENTS & AUTHORITIES**

**I.  The Subpoena should be quashed because providing ExxonMobil with only nine days to comply is patently unreasonable.**

The Subpoena was served on July 6, 2022, and commands that ExxonMobil: (1) present an ExxonMobil representative for a July 15, 2022 deposition covering 9 different topics; and (2) produce at the July 15, 2022 deposition documents in response to 10 requests for production.[2] Thus, the Dealers/Plaintiffs provided ExxonMobil with only nine days to comply with the Subpoena.

The proposed deposition topics cover broad swaths of information and extensive time periods. For example, one of the topics seeks to depose an ExxonMobil representative regarding all communications between ExxonMobil and Circle K from 2007 through 2022 discussing how ExxonMobil priced Mobil-branded fuel more than a decade ago, when ExxonMobil did sell fuel directly to retail gas stations in Southern California.[3] Ex. 12, Examination Topic No. 3. As another

---

[2] The underlying Lawsuit between the Dealers/Plaintiffs and Circle K has a July 15, 2022 deadline for fact discovery. Ex. 14. Thus, Dealers/Plaintiffs may have selected the July 15th compliance date in an effort to obtain information from ExxonMobil before discovery closes in the Lawsuit.

[3] In 2011, ExxonMobil began transitioning away from selling Mobil-branded fuel directly to gas stations in Southern California. By 2013, ExxonMobil was not directly selling Mobil-branded fuel

6

example, one of the topics seeks to depose an ExxonMobil representative regarding every fuel supply contract between ExxonMobil and Circle K—including contracts covering regions that are entirely irrelevant in the Lawsuit (i.e., regions other than Southern California)—that was in effect over the last five years. *Id.*, Examination Topic No. 1.

As discussed below (*infra* pp. 13-14), these topics are irrelevant to the claims and defenses in the Lawsuit between Dealers/Plaintiffs and Circle K. But in addition to being directed to irrelevant topics, providing ExxonMobil with only nine days to identify, gather, and review materials associated with such broad topics—and then prepare a representative to testify as to same—is patently unreasonable. Indeed, Texas courts routinely quash subpoenas that provide less than 14-days to comply. *United States v. 43.412 Acres of Land, more or less, in Hidalgo Cnty., Tex.*, No. 7:20-CV-00239, 2021 WL 3732756, at *1 (S.D. Tex. Aug. 24, 2021) (quashing a subpoena that provided only nine days to comply); *United Healthcare Servs. v. Next Health*, No. 3:17-CV-00243-E-BT, 2021 WL 4734503, at *2 (N.D. Tex. Sept. 29, 2021) (quashing a subpoena that provided only six days to comply and citing authorities to support "the proposition that deadlines less than 14 days [are] likely unreasonable"); *Hernandez v. City of Corpus Christi*, No. CIV.A. C-10-186, 2011 WL 2194254, at *1 (S.D. Tex. June 6, 2011) (quashing a subpoena that provided only 10 days to comply); *see D&S Marine Transp. v. S&K Marine*, No. CV 14-2048, 2016 WL 11687913, at *2 (E.D. La. May 4, 2016) (quashing a subpoena that provided only seven days to comply and recognizing: "It is settled that any timeframe to respond to a subpoena that is less than fourteen (14) days is likely unreasonable.").

---

to gas stations in Southern California, but was instead selling such fuel to wholesalers such as Circle K.

The same result is warranted here—having provided only nine days for ExxonMobil to comply with the onerous commands contained therein, the Subpoena should be quashed. Fed. R. Civ. P. 45(d)(3)(A)(i) (recognizing that courts "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply").

**II.     The Subpoena should be quashed because Dealers/Plaintiffs failed to give Circle K notice before the Subpoena was issued on ExxonMobil, as required by Rule 45.**

The Subpoena includes a command to produce documents. Ex. 12. Thus, Dealers/Plaintiffs were required to serve the Subpoena on Circle K *before* serving the Subpoena on ExxonMobil:

> *Notice to Other Parties Before Service.* If the subpoena commands the production of documents…then *before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.*

Fed. R. Civ. P. 45(a)(4) (emphasis added, in part); *Eyer v. Rivera*, No. SA-17-CV-01212-OLG, 2019 WL 13150023, at *1 (W.D. Tex. July 18, 2019) ("Prior to service of a subpoena on a nonparty, the party seeking the production of documents and tangible things before trial must serve notice and a copy of the subpoena on each party. *See* Fed. R. Civ. P. 45(a)(4). A court may quash the subpoena if prior notice of the subpoena is not provided.").

Dealers/Plaintiffs did not comply with this requirement. Rather than providing Circle K with notice of the Subpoena *before* serving the Subpoena on ExxonMobil—as Rule 45(a)(4) requires—the Dealers/Plaintiffs waited until after the Subpoena was served on ExxonMobil before giving Circle K notice. *See* Ex. 15. The Subpoena should be quashed for this reason alone. *See Eyer*, 2019 WL 13150023, at *1 (quashing a subpoena because it was served before giving notice to the other party in the lawsuit, in violation of Rule 45(a)(4)); *Davis v. Fourth Circuit Court of Appeal*, No. CV 15-4169, 2016 WL 3970995, at *2 (E.D. La. July 25, 2016) (same).

8

**III.     The Subpoena must be quashed because it does not identify the place of compliance, as required by Rule 45.**

Rule 45 provides that all subpoenas "must" identify "a specified time and place" for compliance. Fed. R. Civ. P. 45(a)(1)(A)(iii) ("***Every subpoena must***:…(iii) ***command each person to whom it is directed to do the following at a specified time and place:*** attend and testify, produce designated documents….") (emphasis added); *see also id.* at 30(b)(1) (requiring that deposition notices "must state the time and place of the deposition"). The Dealers/Plaintiffs' did not satisfy this requirement, as the Subpoena does not specify the place at which ExxonMobil's representative should appear for deposition (or produce documents). Instead, the Subpoena directs an unnamed ExxonMobil representative to appear for (and produce documents at) a "Remote Deposition" at an unspecified location.[4]

Rule 45's requirement that "[e]very subpoena must" specify the "time and place" for compliance is not a meaningless technicality. To the contrary, the requirement is critical in determining the effective range of the subpoena and the court in which the subpoena recipient should seek protection.

In terms of the effective range, a subpoena may command attendance at a deposition only within 100 miles of where the person resides, is employed, or conducts business. FED. R. CIV. P. 45(c)(1). To apply this limitation, "the place of compliance must be a physical 'place' subject to

---

[4] The Subpoena states that a remote deposition is authorized "[p]ursuant to the Court's order issued on April 14, 2022 (ECF Doc. 53), a copy of which accompanies this subpoena." Ex. 12, Attachment 1 p. 1. However, the California court's order consists of nothing more than granting the Dealers/Plaintiffs' and Circle K's joint stipulation regarding a remote deposition protocol. ExxonMobil was not a party to this joint stipulation and is not subject to the California court's associated order. Although ExxonMobil may be agreeable to a remote deposition, ExxonMobil has not been ordered to submit, or agreed to submit, or even been asked whether it might stipulate, to a remote deposition. Dealers/Plaintiffs, therefore, have no basis to command a remote deposition. *See* Fed. R. Civ. P. 30(b)(4) (providing that the "parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or remote means").

'geographical limits' and capable of being measured according to mileage." *See CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017). But this limitation is impossible to apply (and, hence, meaningless) in the context of a subpoena that—like the Dealers/Plaintiffs' Subpoena to ExxonMobil—does not specify any place of compliance whatsoever.

Likewise, Rule 45 directs that subpoena recipients should pursue a motion to quash in "the court for the district where compliance is required." FED. R. CIV. P. 45(d)(3)(A). In applying this rule, "the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena as required by Rule 45(a)(1)(A)(iii)." *Herrington*, 354 F. Supp. 3d at 709. But here again, having ignored Rule 45(a)(1)(A)(iii)'s requirement to specify the place of compliance, the Subpoena forces ExxonMobil to make its own determination as to where compliance may take place.

ExxonMobil maintains a substantial office with thousands of employees in Spring, Texas. Further, ExxonMobil anticipates that—to the extent it is required to comply with the Subpoena— most of its compliance efforts (e.g., gathering, analyzing, and producing documents, and preparing and presenting a representative for deposition) would take place within the Houston Division of the Southern District of Texas. Hence, ExxonMobil brings this Motion in the Southern District of Texas. *See* FED. R. CIV. P. 45(d)(3)(A) (motion to quash a subpoena should be filed in "the court for the district where compliance is required"); *see also id.* at 30(b)(4) (where the court orders, or the parties stipulate to, a remote deposition, the deposition is treated for certain purposes as "tak[ing] place where the deponent answers the questions"); *In re: 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 2605957, at *4 (N.D. Fla. May 28, 2021) (explaining that the place of compliance for oral testimony is "where the testimony will be given by the witness"); *Russell v. Maman*, No. 18-CV-06691-RS (AGT), 2021 WL 3212646, at *2 (N.D.

Cal. July 29, 2021) (explaining that a California court does not have jurisdiction to enforce a subpoena for remote testimony from a witness who resides in Washington).

But ExxonMobil—or the Court—should not be required to determine the place of compliance. *See Herrington*, 354 F. Supp. 3d at 709-711 (explaining that Rule 45(a)(1)(A)(iii) eliminates any need for the court and/or party receiving the subpoena to conduct a substantive analysis to determine the place of compliance because the place of compliance is determined by "look[ing] only to the face of the subpoena"). Nor should Dealers/Plaintiffs be able to avoid the limitation on a subpoena's effective range by not specifying a place of compliance. Instead, Rule 45 requires that subpoenas specify the place of compliance to avoid such concerns. Having failed to satisfy this requirement, the Subpoena should be quashed. *Id.* (recognizing that a subpoena that fails to identify a proper place of compliance "is simply not a valid and enforceable subpoena").

IV. **The Subpoena must be quashed because it subjects ExxonMobil to undue burden in seeking confidential commercial information that is not only irrelevant, but that could be obtained from another source (namely, the parties to the Lawsuit) that is more convenient, less burdensome, and/or less expensive.**

As discussed above, the Dealers/Plaintiffs failed to provide an adequate amount of time for ExxonMobil to comply with the Subpoena, failed to provide the requisite notice to Circle K, and failed to identify the necessary place of compliance. But even if those failures could be overlooked, the Subpoena should be quashed because it subjects ExxonMobil to an undue burden in requiring the disclosure of confidential commercial information that is not only irrelevant, but that could be obtained directly from the parties to the Lawsuit.

Rule 45 provides that the Court "***must quash*** or modify" a subpoena that "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv) (emphasis added); *see also* FED. R. CIV. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . [the discovery] can be obtained from some other source that is more convenient, less

11

burdensome, or less expensive."). In assessing whether a subpoena should be quashed for imposing an undue burden, courts should consider the following factors: (1) relevance of the information requested; (2) the need of the party for the information; (3) the breadth of the information request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested information; and (6) the burden imposed. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 819 (5th Cir. 2004).

Moreover, Rule 45 establishes additional protections when a subpoena would require the disclosure of confidential commercial information. FED. R. CIV. P. 45(d)(3)(B)(i) (providing that courts may quash or modify a subpoena that requires the disclosure of confidential commercial information). As the California court recognized in denying the Dealers/Plaintiffs' motion to compel, Circle K's wholesale fuel costs and its contracts with ExxonMobil—which are the central subject of the deposition topics—are confidential commercial information. Ex. 8 p. 6 ("[T]here is no dispute that Circle K's wholesale fuel costs and the Branded Wholesaler Agreement are proprietary trade secrets[.]"); *see* Ex. 5 pp. 5-6.[5]

Applying these standards dictates that the deposition portion of the Subpoena should be quashed. Appendix A to this Motion contains ExxonMobil's detailed objections to the nine deposition examination topics in the Subpoena. Although the detailed objections are too voluminous to fully incorporate into the body of this Motion, a sampling of those objections demonstrates that the deposition topics should be quashed in their entirety.

---

[5] The Subpoena indicates that "there is in effect a Protective Order that is in place in this action" and that "[a]ll this discovery will be identified as confidential, attorneys' eyes only by the" Dealers/Plaintiffs. Ex. 12 p. 9. The Protective Order, however, extends only to the parties to the Lawsuit (Dealers/Plaintiffs and Circle K) and provides no protections or safeguards for maintaining the confidential nature of documents or information obtained from non-parties such as ExxonMobil. *See* Ex. 16.

First, the deposition topics seek information that is irrelevant to the claims and defenses in the Lawsuit between Dealers/Plaintiffs and Circle K. Again, the California court expressly identified the proper scope of discovery: "Plaintiffs, however, are not precluded from conducting discovery into how Circle K sets the prices it charges Plaintiffs and how Circle K's prices compare to those of its competitors." Ex. 8 p. 9. Yet none of the deposition topics in the Subpoena seek information about how Circle K sets its prices or how its prices compare to its competitors. Instead, the deposition topics are directed to wholly irrelevant concerns.

For example, Examination Topic No. 1 seeks deposition testimony regarding the "terms and conditions" of the fuel supply contracts—referred to as Branded Wholesaler Agreements (*see id.* p. 5)—between ExxonMobil and Circle K. But the California court has already indicated that the Branded Wholesaler Agreements are irrelevant because they speak to the prices paid by Circle K in purchasing fuel from ExxonMobil, as opposed to speaking to the prices that Circle K charges in selling fuel to the Dealers/Plaintiffs. *Id.* p. 8 ("The price Circle K pays for the fuel sold to Plaintiffs is not relevant to this analysis and is not necessary for Plaintiffs to prepare their case for trial."); *see also Austin v. Motiva Enters.*, No. 2:03-CV-0451-RDP, 2005 U.S. Dist. LEXIS 22150, at *8 (N.D. Ala. 2005) ("[T]he pricing for jobbers versus the pricing for retailers, is simply not relevant to the establishment of [a] pricing claim under § 2-305.").[6] Quite simply, nothing contained in the Branded Wholesaler Agreements informs the relevant inquiry of how Circle K sets its prices in selling fuel to the Dealers/Plaintiffs or how its prices compare to the prices charged by its competitors.

---

[6] "Jobber" is an industry term-of-art that describes wholesale distributors like Circle K, which purchase gasoline from refining companies (e.g., ExxonMobil) and then sell that gasoline to retail gas stations (e.g., Dealers/Plaintiffs).

As another example, many of the proposed deposition topics seek information about ExxonMobil's pricing of Mobil-branded fuel between 2007 and 2012, when ExxonMobil did sell fuel directly to retail gas stations. Ex. 12, Examination Topic Nos. 2, 3, 6. But the claims and allegations in the Dealers/Plaintiffs' live complaint are directed to alleged "facts and events related to the pricing of gasoline by [Circle K] that have occurred during the four (4) years prior to the filing of this Complaint." Ex. 1 ¶ 25. The Dealers/Plaintiffs filed the Lawsuit in 2021, such that the relevant time period (which corresponds with the applicable statute of limitations) is 2017 through present. Consequently, ExxonMobil's pricing of fuel between 2007 and 2012 is entirely irrelevant.

Second, most of the deposition topics seek information that could be more readily obtained (to the extent it is within the proper scope of discovery) from Circle K and/or the Dealers/Plaintiffs.[7] For example, several of the topics seek communications between ExxonMobil and Circle K or between ExxonMobil and the Dealers/Plaintiffs. Ex. 12, Examination Topic Nos. 2–6. These same communications could be sought—without burdening non-party ExxonMobil—from the actual parties to the Lawsuit. Likewise, information regarding the terms and conditions of the fuel supply contracts between ExxonMobil and Circle K (Examination Topic No. 1) could also be sought directly through Circle K.

---

[7] As indicated, there is a July 15, 2022 deadline for fact discovery in the underlying Lawsuit between Dealers/Plaintiffs and Circle K. *Supra* n.2. This raises the possibility that Dealers/Plaintiffs are seeking information from ExxonMobil—even though Circle K is in possession of the same information—because they could not obtain the information from Circle K before discovery closes in the Lawsuit. It is, however, "well established that a party may not use Rule 45…to circumvent a discovery deadline." *Hernandez v. City of Corpus Christi*, No. CIV.A. C-10-186, 2011 WL 2194254, at *1 (S.D. Tex. June 6, 2011); 9 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 45.02[4][a] (3d ed. 2011) ("[A] Rule 45 subpoena may not be used to circumvent discovery rules or to make an untimely request for documents or tangible things that should have been requested during the discovery period.").

As Texas courts recognize, when—as here—the information is available from parties to the lawsuit, a subpoena commanding a non-party to produce the information is unduly burdensome and should be quashed. *E.g., Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15-CV-438-RP, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015) ("The Court finds that until and unless Plaintiffs can establish they are unable to obtain the requested information from the Defendant, subpoenaing the information from SAS creates an undue burden that is not outweighed by Plaintiffs' need for the information."); *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, No. 3:19-CV-2074-G-BK, 2020 WL 11028224, at *2 (N.D. Tex. June 22, 2020) (quashing a subpoena because the information could be obtained directly from parties).

Third, the deposition topics are broad in scope and cover extensive time periods. For example, Deposition Topic No. 3 would require an ExxonMobil representative to give deposition testimony regarding communications between ExxonMobil and Circle K over a 15-year period (2007 to 2022). Likewise, Deposition Topic No. 1 would require an ExxonMobil representative to testify as to every fuel supply contract between ExxonMobil and Circle K—including contracts covering regions that are entirely irrelevant in the Lawsuit—that was in effect over the last five years. Such topics are facially overbroad and should be quashed under any set of circumstances. *See Banca Pueyo, S.A. v. Lone Star Fund IX (U.S.)*, No. 3:18-MC-100-M, 2020 WL 10046110, at *3 (N.D. Tex. Sept. 25, 2020) (recognizing that a subpoena may be facially overbroad if it is not limited to the relevant time period or topics). But in light of the fact that the topics are directed to a non-party to the Lawsuit and seek irrelevant and confidential information that is equally available from the parties to the Lawsuit, it becomes manifestly clear that requiring compliance would impose an undue burden on ExxonMobil. The deposition portion of the Subpoena should, therefore, be quashed.

**Request for Relief**

For the reasons stated above, and for the reasons stated in ExxonMobil's objections to the deposition topics (as fully detailed in Appendix A), ExxonMobil requests that the Court quash the deposition portion of the Dealers/Plaintiffs' Subpoena. In the alternative, ExxonMobil requests that the Court modify the Subpoena to protect ExxonMobil, a non-party, from over-reaching discovery.

Date: July 14, 2022

Respectfully submitted by:

**MCGINNIS LOCHRIDGE LLP**

*/s/ Seth Isgur*
Seth Isgur
State Bar No. 24054498
sisgur@mcginnislaw.com
William K. Grubb
State Bar No. 24107793
wgrubb@mcginnislaw.com
609 Main Street, Suite 2800
Houston, Texas 77002
(713) 615-8500
(713) 615-8585 (fax)

***Attorneys for ExxonMobil Oil Corporation***

**CERTIFICATE OF CONFERENCE**

I certify that leading up to the filing of this Motion, counsel for ExxonMobil Oil Corporation has conferred with counsel for Dealers/Plaintiffs on multiple occasions, via telephone and email, and counsel for Dealers/Plaintiffs opposes the relief sought in this Motion.

*/s/  Seth Isgur*
Seth Isgur

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 14, 2022, a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure on all counsel of record in the Lawsuit.

*/s/ Seth Isgur*
Seth Isgur
